Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 411 | **DATE** | 5/8/01 |
| **CASE TITLE** | Goodheart-Willcox, Co. vs. Media Prof Ins. Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendants' motion for summary judgment is denied in part and granted in part and Plaintiff's motion for summary judgment is denied in part and granted in part. Defendants' joint motion to strike exhibits A and B to Plaintiff's reply memorandum of law is granted. Judgment in favor of defendants and against Plaintiffs and declares that defendants have no obligation to indemnify the plaintiff for its attorney's fees and costs incurred in the ESA litigation. Judgment entered in favor of defendants and against plaintiffs on plaintiffs amended complaint, and Judgment entered in favor of defendants and against plaintiffs on defendants counter claim.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | 2 | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | MAY 29 2001 | date docketed | | 41 |
| | Docketing to mail notices. | FILED FOR DOCKETING | | docketing deputy initials | | |
| | Mail AO 450 form. | | | MM | | |
| | Copy to judge/magistrate judge. | 2001 -8 PH 4 17 | 5/7/2001 | date mailed notice | | |
| | mm | courtroom deputy's initials | | mm6 | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| THE GOODHEART-WILLCOX COMPANY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| Counter-defendant, | ) | No. 00 C 0411 |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| | ) | |
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA, INC., EMPLOYERS INSURANCE OF WAUSAU, AND NATIONAL CASUALTY COMPANY, | ) | |
| | ) | **DOCKETED** |
| | ) | MAY 29 2001 |
| | ) | |
| Defendants, | ) | |
| Counter-plaintiffs. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on cross-motions for summary judgment on an insurance coverage claim between Plaintiff, The Goodheart-Willcox Company, Inc. ("Plaintiff" or "GWC") and the Defendants, First National Insurance Company of America, Inc. ("First National"), Employers Insurance of Wausau ("Wausau") and National Casualty Company's ("National") (collectively "Defendants" or "Insurers"). GWC claims the Insurers should pay its legal fees incurred in successfully defending a lawsuit brought by Engineering Software Associates ("ESA"). The Insurers claim their policies do not cover the expenses incurred by GWC in defense of the ESA lawsuit, and if they are covered, should be

excluded. The Court finds, as a matter of law, ESA's claim against GWC was covered under the Policies, but was excluded under the Policies' Exclusion B.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). The parties have proceeded by way of cross-motions for summary judgment on the policy interpretation issues presented by the case.

## II. BACKGROUND FACTS

A.     **The Parties**[1]

GWC is an educational textbook publisher. Engineering Software Associates ("ESA") is a software company. ESA produced test creation software, incorporating into its software program customized test materials provided by GWC. From 1992 through February of 1999, GWC marketed the test creation software under a non-exclusive license to use and distribute ESA's software in connection with its textbooks.

In 1992, GWC procured, through a broker, media special perils insurance policies issued by National Casualty, First National and Wausau, which were in effect from April 15, 1992 through April 15, 1999 (with consecutive one-year policy periods). During this period,

---

[1] The background facts in this opinion are derived from the parties' statements of uncontested facts and their briefs.

Media/Professional Insurance was the managing general agent for the Insurers.

## B. The Insurance Policies

First National issued to GWC insurance policy LSP&-300-513F, effective April 15, 1992 through April 15, 1993. Wausau issued to GWC insurance policy LSW002096, effective April 15, 1993, through April 15, 1994. Wausau renewed the policy effective April 15, 1994 through April 15, 1995. National Casualty issued to GWC insurance policy LS002253, effective April 15, 1995 through April 15, 1996. National Casualty renewed the policy each year for the periods April 15, 1996 through April 15, 1999. Each of the policies contained coverage in the amount of $1,000,000, subject to a self-insured retention of $25,000.

## C. ESA's Lawsuit Against GWC

On March 2, 1999, ESA filed suit against GWC and John Flanagan, its President, in the United States District Court, District of Minnesota, Case No. 99 CV-342 DSD/JMM ("ESA Litigation"). ESA's original complaint pled claims for copyright infringement, unfair competition, and breach of contract. ESA filed an amended complaint against GWC pleading claims of copyright infringement, deceptive trade practices, and breach of contract. ESA subsequently filed a second amended complaint pleading claims of copyright infringement, unfair competition under the Lanham Act, and breach of contract. Finally, ESA filed a third amended complaint against GWC claiming copyright infringement and breach of contract.

As part of the 1992 licensing agreement between ESA and GWC, ESA created software from test questions GWC provided and GWC incorporated the software into its

3

textbooks. ESA filed suit after it allegedly learning GWC was engaged in the practice of licensing for a fee or selling for a fee the ESATEST software products in violation of the license agreement. ESA alleged this practice had been going on since shortly after the license agreement was executed. In its third amended complaint, ESA alleged GWC breached the license agreement. Count one of the third amended complaint alleged GWC breached the license agreement by sublicensing and/or selling for a fee ESATEST products without first negotiating with ESA to do so and for failing to take reasonable steps to prevent unauthorized reproduction of ESA's copyrighted products. Count two alleged GWC infringed ESA's copyrights by distributing its software for a fee without a license.

On March 22, 1999, GWC tendered the defense of the ESA litigation to Media, as the duly authorized agent of the Insurers. GWC subsequently tendered the defense of the amended, second amended, and third amended complaints to Media. The Insurers denied coverage with respect to each of ESA's complaints. Therefore, GWC undertook its own defense of ESA's suit.

GWC was ultimately successful in dismissing the copyright claims and resolving the litigation. GWC filed a motion to dismiss the copyright infringement claim. In its motion to dismiss, GWC argued the copyright infringement claim was incidental to and subsumed by the breach of contract claim, and thus failed to state a claim under the Copyright Act. A Magistrate Judge issued a report and recommendation ("R&R") recommending that GWC's motion to dismiss count two of ESA's third amended complaint, the copyright claim, be granted. ESA appealed to the District Court which adopted and sustained the R&R and

dismissed the copyright infringement claim. ESA sought leave to file an interlocutory appeal which was also denied. On October 13, 2000, GWC and ESA entered into a settlement ending the ESA litigation.

In its third amended complaint ESA argued GWC's distribution for a fee was an unlicensed distribution of a copyrighted work and constituted copyright infringement. The court disagreed and found, "[t]he distribution was licensed; it was the manner in which it was distributed that is in question." (R&R p.6) In other words, it was the way GWC distributed the product, for a fee, in violation of the agreement, which was and is the root of ESA's claim against it.

In its conclusion, the court makes it clear the case involved breach of contract, not copyright infringement. The court concluded, " We find that Plaintiff's suit is based on contract, and not on copyright infringement. Plaintiff's Complaint does not seek a remedy expressly provided for by the Act or assert a claim requiring construction of the Act. Plaintiff's claim for breach of contract is based upon the same alleged facts, and the resolution of that claim will resolve the suit." (Id. p. 9).

After the Insurers declined coverage, GWC filed a complaint for declaratory judgment against them. The Insurers responded by filing separate counterclaims for declaratory judgment against GWC. GWC claims it has paid $196,832.26, in attorney's fees and costs in the ESA litigation. It also claims it has paid $15,800.00, in fees and costs relating to this litigation.

## III. ISSUES PRESENTED

The issues presented to the Court for disposition are as follows. First, the Court is asked to determine whether ESA's claim for copyright infringement is one of the enumerated claims covered by the Insurers' Policies. In order to make that determination, the Court must also decide a subissue of whether coverage under the Policies requires a causal link between GWC's advertising of its "works" and the content of GWC's "works". The second issue before the Court is whether the claims are excluded under the Policies' Exclusion B. To decide this issue the Court must determine whether the ESA copyright infringement claim "arises out of" the breach of the license agreement.

## IV. COVERAGE UNDER THE POLICIES

### A.   The Relevant Policy Language for the Issue of Coverage

### 1. The First National and Wausau Policies' Book Publisher Coverage Part[2]

The First National and Wausau Policies provide in pertinent part as follows:

> In consideration of the premium and in reliance upon the statements in the Declarations and subject to all other terms of this policy, the Company agrees with the **Insured**[3] named in the Declarations:

> "To pay on behalf of the **Insured** all **loss** and **claim expense** which the **Insured** shall become legally obligated to pay because of liability imposed by

---

[2] In the First National and Wausau policies, the pertinent coverage clauses are captioned "Book Publisher Coverage Part" and in the National Policy the same section is captioned "Media Special Perils Policy Book Publishing Coverage." The Court will call them both either "Policies"or "Book Publisher Coverage Part."

[3] In the policies certain words are set forth in bold face type, therefore the Court sets those words forth in bold face type as well.

law or **assumed under contract** as a result of one or more **claims** arising out of ...infringement of copyright...(and) **unfair competition**.

committed in the utterance or dissemination of **matter** arising out of an **occurrence** during the policy term, regardless of when **claim** is made or suit is brought."

The First National and Wausau policies include the following relevant definitions:

**"Claim Expense"** is defined as "fees charged by an attorney in defense of a claim..."

**"Matter"** is defined as "the printed, pictorial, artistic, musical, audio, or audio visual content of **works** and related **advertising**."

**"Advertising"** is defined as **"advertising** material, publicity material, promotional material or promotional appearances of any kind on the **Insured's** behalf."

**"Works"** is defined as "books in any form, periodical publications, monographs, films, cassettes, audio-visual aids or other materials related directly to said publications."

**"Occurrence"** is defined as "(1) the publication, republication, serialization or exhibition of works...(2) the acquisition, researching, preparation, distribution, licensing or advertising of works or the execution of a contract to exhibit a work or works (herein called publishing activities)..."

## 2. The National Policy Book Publisher Coverage Part

The Coverage Agreements of the National policy provides in pertinent part as

follows:

In consideration of the premium and in reliance upon the statements in the Declarations and subject to all other terms of this policy, the Company designated in the Declarations agrees with the **Insured** named in the Declarations to the following:

7

"The Company shall pay on behalf of the **Insured** all **loss** and **claim expense** which the **Insured** shall become legally obligated to pay because of liability imposed by law or **assumed under contract** as a result of one or more **claims** arising out of ...infringement of copyright (or)... **unfair competition**..."

"committed in the utterance or dissemination of **matter** by or with the permission of the **Insured** during the Policy Period in **book publishing** and related **advertising**, regardless when **claim** is made or suit is brought."

The National Policy includes the following relevant definitions:

"**Claim Expense**" is defined as "...fees charged by an attorney in defense of a **claim**..."

"**Matter**" is defined as "printed audio, visual, or information content, and the use of such **matter** by others."

"**Advertising**" is defined as " **advertising**, publicity, or promotion of the **Insured's book publishing** activities or of the products or services of others."

"**Book Publishing**" is defined as "researching, preparation, publication, republication, serialization, exhibition or distribution of **work(s)** or the licensing or execution of a contract or agreement to publish or exhibit **work(s)**."

"**Works**" is defined as "books and literary **work(s)** in any form, publishing software, periodical publications, monographs, films, cassettes, audio visual aids and other materials related directly to such **work(s)**."

## B.     The Claims Are Covered Under The Insurers' Book Publisher Policy Part

In determining whether the claims are covered, this Court must look to the general principles of construction of insurance contracts. Construction of an insurance policy is a matter of law. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90 (1992).

Under Illinois law[4], "the construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.,* 2000 U.S. Dist. LEXIS 6939, *5 (N.D. Ill. May 18 2000), quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill. 2d 384, 390 (1993). "In construing an insurance policy, the court must ascertain the intent of the parties to the contract." *Outboard Marine Corp.,* 154 Ill. 2d at 108. The court then should construe the policy as a whole "with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." *Id.* Where a policy's words are unambiguous, the plain, ordinary and popular meaning must be given them. *Outboard Marine Corp.,* 154 Ill. 2d at 108. The Court finds there are no ambiguous terms in the Policies that are relevant to this decision. The key words in the Policies, Matter, Works, and Occurrence are all defined in the Policies. Therefore, the Court will read the Policies and construe their coverage based on those definitions, as well as make its determinations relying on the plain language of the Policies.[5] ESA's claim of copyright infringement is covered under each of the Policies. The claim fits squarely into what the Policies deem covered.

---

[4] The parties agree Illinois law governs the coverage issues.

[5] Thus the Court will not rely on extrinsic evidence in deciding the coverage issues.

### 1. The Policies Do Not Require a Causal Link Between the Content of GWC's"Works" and Its Advertising of Its "Works"

The Defendants argue there is no coverage under the Policies' Book Publisher Part because ESA's claims lack a causal connection with the content of GWC's advertising of its covered "works." The Court disagrees. The coverage under the First National, Wausau, and National policies does not require a causal link between the content of GWC's works and its advertising. The plain language of the First National and Wausau policies is that the coverage extends to GWC's "works" and any advertising related to those "works." The Policies cover claims that arise out of certain enumerated offenses, such as copyright infringement, as is the case here. In the First National and Wausau policies, the offense must be "committed in the utterance or dissemination of matter arising out of an occurrence." As defined earlier, matter is "the printed, pictorial, artistic, musical, dramatic, audio, or audio-visual content of works and related advertising." Similarly, the National Policy covers "claims arising out of...copyright infringement...committed in the utterance or dissemination of matter...and related advertising." This Court construes those clauses to mean that in order for ESA's copyright claim to fall within the Policies' coverage, the alleged copyright infringement must have been committed in the utterance or dissemination of the content of GWC's works. It does not mean that it must also be uttered or disseminated in its related advertising. If the offense did however occur in the advertising relating to GWC's works, it too would be covered. But, that is not the case here.

Coverage under the Book Publisher Part is not dependent on advertising activities. The plain language does not require an "advertising injury." For this reason, the cases cited by the Defendants are distinguishable. *McDonald's Corp. v. American Motorists Ins.* Co., No. 97 L 0144 HLW, mem. op. and order (Ill. Cir. Ct. DuPage Co. Apr. 12, 2000)(granting defendant insurers' motion for summary judgment based upon absence of a causal connection between the offense for which coverage is sought and the advertisement or promotion required by the policy, where "matter" is defined in policy as "the content of advertising, publicity or promotion in any form, including but not limited to, the artistic, literary, printed, pictorial, statistical, musical, audio, audio-visual or dramatic content of such advertising..."); *Vickers, Inc. v. Seaboard Sur. Co.*, No. 94-3864, 1996 U.S. Dist. LEXIS 19689 (D.N.J. Feb. 5, 1996)(similarly finding requisite causal connection lacking where policy covered copyright infringement "committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the insured's advertising activities."); *Winkelvoss Consultants, Inc. v. Federal Ins. Co.*, 991 F. Supp. 1024 (N.D. Ill. 1998)(granting Insurer's motion for summary judgment where duty to defend "advertising injury" is at issue and where policy committed Insurer to "pay damages the insured becomes legally obligated to pay by reason imposed by law or assumed under an insured contract because of:...personal injury or advertising injury to which this insurance applies.") The instant policy covers "works" and also "related advertising." This is substantively different than a policy that is designed for advertising injury which requires there to be a causal connection between the offense and related advertising. That is simply

not what this Court is dealing with here.[6]

## C.    The Book Publisher Part Policies are Indemnity Policies

"The substantive distinction between indemnity and liability policies is that payment of a claim by the insured is a condition precedent to an insured's right to recover under the former, but not the latter." *In Re Liquidation of Pine Tops Ins. Co.* , 266 Ill. App.3d 99, 103 (1994). The standard duty to defend policy is one in which the insurer selects counsel and assumes control of the defense, paying all fees and costs directly. *Id.* Under an indemnity policy, the insured must pay a claim before a right to recover attaches. *Id* at 104.

Under Illinois law, courts recognize that an "insurer's duty to defend is much broader than its duty to indemnify its insured." *Crum & Forster Managers Corp. v. Resolution Trust Corp.* 156 Ill.2d 384, 393-94 (1993). If a single cause of action in the underlying complaint is potentially covered under the Insurer's policy, the duty to defend attaches. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Thomas Madden & Co.*, 813 F. Supp. 1349, 1351 (N.D. Ill. 1993). If any of the claims in the underlying complaint are potentially covered under the policy, the duty to defend attaches even if the allegations are "groundless, false or fraudulent." *State Farm Fire & Cas. Co. v. Leverton*, 289 Ill.App. 3d 855, 858 (1997).

"[The] duty to indemnify arises only if the facts alleged actually fall within coverage." *Crum & Forster*, 156 Ill. 2d at 398 . "[T]he liability of an insurer under an indemnity policy

---

[6] The Defendants also argued in their briefs ESA's claims are not covered under the Policies because the claims do not involve the content of GWC's "works." This contention was dropped at oral argument held on April 24, 2001. Therefore, the Court will not further address the issue.

affixes at the time the insured makes payment on a covered claim." *In Re Pine*, 266 Ill. App.3d at 104.

The Defendants argue the Policies impose a duty to indemnify for defense costs and not a duty to defend. This Court agrees. The plain language of the Policies creates a duty to indemnify rather than a duty to defend. The Policies include clauses requiring the insured to provide for its own defense, "The Named Insured will employ counsel...shall file proper pleadings in said suit...[i]f the suit is brought to trial, the Named Insured shall proceed to conduct the defense thereof." (First National Policy § VA, Wausau Policy § VA, National Policy § VIE). The Policies contract to "pay on behalf of the insured all loss and claim expense...arising out of...copyright infringement..." (First National Policy § I, Wausau Policy § I, National Policy § I). The Policies define "claim expense" as including attorney fees in defense of a claim. Thus, the Policies provide for reimbursement of attorney's fees and costs incurred in the defense of a covered claim. Additionally, the Policies provide that a "claim" is a demand for money or services even "if any of the allegations of the claim are groundless, false or fraudulent." Therefore, because the potentially groundless copyright claim is covered under the Book Publisher's Part of the Policies, the next issue is whether the claims are excluded by Exclusion B.

## V. ESA'S CLAIMS ARE EXCLUDED UNDER THE POLICIES' EXCLUSION B

The Court having found the copyright infringement claim covered by the Book Publisher Part of the Insurance policies, must now decide whether the claim is excluded from

13

coverage under Exclusion B of the Policies. The determination of whether the claim is excluded turns on whether ESA's claim arises out of a breach of contract. The Court finds that it does. Along with their coverage clauses, the Policies also include specific exclusions from coverage. Exclusion B to the First National and Wausau Policies' Book Publisher Part provides in pertinent part as follows:

> This Coverage does not apply to...**claims** arising out of breach of any contract or agreement or failure of performance of contract, provided that this exclusion shall not apply to liability **assumed under contract** as defined herein[.]

Exclusion B to the National Policies' Book Publisher Part similarly provides in pertinent part as follows:

> This Company shall not be obligated to pay **damages** or **claim expense** resulting from **claims**... for or arising from any breach of contract other than liability **assumed under contract**[.]

"The phrase 'arising out of' is both broad and vague, and must be construed in favor of the insured... 'arising out of' has been held to mean 'originating from,' 'having its origin in,' 'growing out of,' and 'flowing from.'" *West Am. Ins. Co. v. Bedwell*, 306 Ill. App. 3d 861 (1999), quoting *Maryland Casualty Co. v. Chicago & North Western Transportation Co.*, 126 Ill. App. 3d 150, 154 (1984). Additionally, because "arising out of" is considered so broad and vague "but for" causation, "not necessarily proximate cause satisfies the language." *Liberty Mutual Insurance Co. v. Westfield Insurance Co.*, 301 Ill.App.3d 49, 54 (1998). In order for the Court to find Exclusion B excludes the copyright infringement

claim, that claim must either originate from, have its origin in or grow from the breach of the license agreement or not exist 'but for' the agreement.

ESA's claim clearly arises out of, grows out of and has its origin in the breach of the parties' license agreement. Furthermore, but for the license agreement, there would be no claim for copyright infringement. On September 4, 1992, ESA entered into a license agreement with GWC granting GWC the right only to reproduce and to use ESATEST software products in connection with the distribution of GWC test products. (Third Am. Compl. ¶ 15). The licensing agreement specifically prohibited GWC from sublicensing for a fee or selling for a fee the ESATEST software products. (Third Am. Compl. ¶ 17). ESA sued GWC for doing just that. By selling the software for a fee, GWC allegedly breached its agreement with ESA. Clearly the copyright infringement claim arises out of the breach of the agreement; ESA sued because GWC sold its software for a fee in violation of the agreement.

ESA's claim for copyright infringement originated from its agreement with GWC because the alleged breach of that agreement gave rise to the copyright infringement claim. This is not a case where an unknown third party sued GWC for copyright infringement. This is a case where GWC contracted with ESA and ESA sued for copyright infringement arising out of a breach of the parties' agreement. But for the breach of the agreement, ESA would not have sued GWC for copyright infringement. The coverage in the Policies protects insureds from the kind of unknown third party suits for copyright infringement where there has been no agreement between the parties and the suit comes "out of the blue." Exclusion

B in the Policies excludes from coverage a case where parties have a contract and the breach of that agreement leads to a lawsuit.

In ESA's third amended complaint, in the jurisdiction and venue section, it reads "This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. § 101 et. seq. *and for a related claim of breach of contract.*" (emphasis added). This in itself shows the claims are inextricably intertwined and that in fact the copyright infringement claim does arise out of the licensing agreement.

Under count two of the third amended complaint, the copyright infringement claim, ESA again reiterates ESA's license agreement with GWC did not grant GWC a license to sell for a fee the ESATEST software. This violation of the agreement gave rise to the copyright infringement action. In ¶ 39, count two, ESA alleges "By licensing for a fee or selling for a fee the ESATEST software products...without authorization from ESA, GW[C]...has committed copyright infringement..." Clearly the claim arises from the breach of the agreement, ESA even tracks the wording of the agreement when stating its claim.

In addition, the R&R, which was adopted by the District Court, further illustrates the extent to which the copyright infringement claim arises out of the breach of the license agreement. In the findings of fact section, the court explains the licensing agreement between GWC and ESA quoting the language granting GWC a license, "a world-wide, non-exlusive license to reproduce and use ESATEST II for the life of each edition...expressly [prohibiting Defendant] from sublicensing or selling ESATEST II for a fee." This lays the groundwork for the court's subsequent conclusion that the claim for copyright infringement

is really nothing more than a contract claim for violation of the agreement prohibiting GWC from selling ESATEST for a fee.

In the analysis section, the court sets out to determine whether this claim fell under the Copyright Act or whether it was a claim that was actually a contract issue. In the analysis the court notes, " The Copyright Act intends to protect the act of distribution itself...it would constitute infringement if [GWC] did not have the right to distribute the software and did so...The purpose of the Act is not to dictate the fee charged in distributing. That is a matter that is better handled by contract." ( R&R p.6-7).

In this case, the issue of selling the software for a fee was handled by a contract, the license agreement. When GWC breached that license agreement, the copyright claim arose. The copyright infringement claim therefore grows from the breach of the license agreement and is as the court discussed, a case of contract law not copyright. The court also concluded that because the agreement allows for distribution it is licensed under copyright law and "we must look to the law of contracts to determine the ramifications of Defendant's alleged breach." (R&R p.7). Because the suit involved an issue of contract not copyright, construction of the Copyright Act was not required.( R&R p.8). As stated earlier, the court concluded GWC's motion to dismiss should be granted. It based this conclusion mainly on the finding that ESA's claim for copyright infringement was based on the same facts as the breach of contract claim and that resolution of that claim would resolve the suit. ( R&R p.9). Thus, GWC's successful argument that ESA's copyright infringement claim was subsumed by its contract claim helps contribute to its loss in its suit against its Insurers.

It is evident the copyright claim arises out of, has its origin in and grows from the breach of the license agreement. But for the breach of the license agreement, there would not be a copyright claim at all. Thus, the Plaintiff's claim for reimbursement of attorney's fees incurred in the defense of the ESA litigation is excluded under the Policies' Exclusion B.

## VI. CONCLUSION

The Court finds ESA's claim is covered under the Insurers' Policies, however, it fits squarely within Exclusion B of those Policies. Therefore the Plaintiff is not entitled to indemnification for its attorneys fees or costs for defending itself against ESA.

For the foregoing reasons, **Defendants' motion for summary judgment is denied in part and granted in part and Plaintiff's motion for summary judgment is denied in part and granted in part.**

**SO ORDERED THIS 8th DAY OF MAY 2001.**

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies delivered in open court or mailed to:**

Edward J. Whalen
Paul E. Flaherty
Hedberg, Tobin, Flaherty & Whalen
Three First National Plaza
Suite 1950
Chicago, IL 60602

Attorneys for Plaintiff

Peter J. Mone
Ronald L. Ohren
Erin M. McCloskey
Baker & McKenzie
One Prudential Plaza
130 East Randolph Drive
Chicago, IL 60601

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THE GOODHEART-WILLCOX
COMPANY, INC.

  Plaintiff,
  Counter-defendant,

    v.

FIRST NATIONAL INSURANCE
COMPANY OF AMERICA, INC.,
EMPLOYERS INSURANCE OF
WAUSAU, AND NATIONAL
CASUALTY COMPANY,

  Defendants,
  Counter-plaintiffs.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DOCKETED**

MAY 29 2001

No. 00 C 0411

Magistrate Judge Morton Denlow

## FINAL JUDGMENT ORDER

This cause coming on to be heard on Plaintiff's Amended Complaint for Declaratory Judgment and Defendants' Counterclaims for Declaratory Judgment and the Court having decided the parties' cross-motions for summary judgment.

**IT IS HEREBY ORDERED:**

1.  The Court enters judgment in favor of Defendants and against Plaintiffs and declares that Defendants have no obligation to indemnify the Plaintiff for its attorney's fees and costs incurred in the ESA litigation.

41

2.    Judgment is entered in favor of Defendants and against Plaintiff on Plaintiff's Amended Complaint.

3.    Judgment is entered in favor of Defendants and against Plaintiff on Defendants' Counterclaims.

**ENTERED:**

_Morton Denlow_
**MORTON DENLOW**
**United States Magistrate Judge**

Date:  May 8, 2001